# EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

| | ATTORNEYS AT LAW | |
|---|---|---|
| JONATHAN S. ABADY | | VASUDHA TALLA |
| MATTHEW D. BRINCKERHOFF | 600 FIFTH AVENUE AT ROCKEFELLER CENTER | |
| ANDREW G. CELLI, JR. | 10TH FLOOR | ERIC ABRAMS |
| RICHARD D. EMERY | NEW YORK, NEW YORK 10020 | DAVID BERMAN |
| DEBRA L. GREENBERGER | | NICK BOURLAND |
| DIANE L. HOUK | TEL: (212) 763-5000 | DANIEL M. EISENBERG |
| DANIEL J. KORNSTEIN | FAX: (212) 763-5001 | SARA LUZ ESTELA |
| JULIA P. KUAN | www.ecbawm.com | ANDREW K. JONDAHL |
| HAL R. LIEBERMAN | | SARAH MAC DOUGALL |
| ILANN M. MAAZEL | | SANA MAYAT |
| KATHERINE ROSENFELD | | HARVEY PRAGER |
| ZOE SALZMAN | | VIVAKE PRASAD |
| SAM SHAPIRO | | MAX SELVER |
| EARL S. WARD | | EMILY K. WANGER |
| O. ANDREW F. WILSON | | |

November 22, 2023

*Via ECF*

Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: **Blain v. State University of New York Downstate Medical Center**
       *Case No. 1:22-cv-03022-FB-MMH*

Dear Judge Block:

    This firm represents Defendant Dr. Mark Stewart ("Dr. Stewart") in the above-captioned case. Pursuant to the Court's direction at the November 16, 2023 pre-motion conference, we write to set out in detail why the Amended Complaint (Dkt. 78) fails—even when liberally construed—to state a claim against Dr. Stewart.

    This is not a case of a defendant making a routine motion to dismiss that has little chance of success as a delay tactic. This Court has already concluded that Plaintiff Dr. Stacy Blain's ("Plaintiff's" or "Dr. Blain's") claims against other defendants in this action are unlikely to succeed. *See* Dkt. 73 at 27 (holding that "the record does not currently establish a likelihood of success on the merits sufficient to warrant a preliminary injunction"). In response to the Court's ruling, Dr. Blain has adopted a kitchen-sink approach, embroiling Dr. Stewart in a dispute in which he has no part. Dr. Blain's allegations against Dr. Stewart are so thin and conclusory, and so untethered to Dr. Blain's central allegations, that they fail to state a claim. Dr. Stewart's motion to dismiss should be granted.

**<u>Allegations Required to State Plaintiff's Claims Against Dr. Stewart</u>**

    Plaintiff did not name Dr. Stewart at all in her original complaint. Now, in the Amended Complaint, Plaintiff has named Dr. Stewart as a defendant in only two of her eleven claims: a discrimination claim under the New York State Human Rights Law ("NYSHRL") and a discrimination claim under the New York City Human Rights Law ("NYCHRL"). Am. Compl., Fifth and Seventh Causes of Action, ¶¶ 254–58, 263–67. In both claims, Plaintiff alleges Dr. Stewart "aided and abetted Defendant [Wayne] Riley's discrimination against Dr. Blain." *Id.*

¶¶ 255, 264.

To sustain a claim under either the NYSHRL or the NYCHRL, Plaintiff must allege discriminatory conduct as well as facts establishing "that the conduct is caused by a discriminatory motive . . . [i.e.] **because of** [the protected characteristic]." *Mihalik*, 715 F.3d at 110 (cleaned up) (emphasis in original). "[T]he NYCHRL is **not a general civility code**," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013) (emphasis added), though, and so "[p]etty, slight, or trivial inconveniences are not actionable," *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (cleaned up). To sustain an aiding and abetting claim for gender discrimination, Plaintiff must "allege that defendant actually participated in the conduct giving rise to a discrimination claim." *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020).

**The Conclusory Allegations Against Dr. Stewart Fail to State Either Claim**

Plaintiff has not alleged a discrimination claim against Dr. Stewart. Plaintiff's Amended Complaint centers around an allegedly discriminatory research misconduct investigation the State University of New York Downstate Medical Center ("SUNY Downstate") conducted against her in and around 2019. Dr. Blain alleges that SUNY Downstate "weaponized a three-year-old claim of 'research misconduct'—which had been previously investigated, with SUNY Downstate clearing her of any wrongdoing—and convened a panel of three men, who proceeded to conduct a biased and predetermined inquiry and investigation." Am. Compl. ¶ 3. Notably, Plaintiff did not name Dr. Stewart in any of the retaliation claims: this belies what even Plaintiff recognizes as Dr. Stewart's tangential involvement in this case.

Here are the sole allegations on which Plaintiff bases her claims against Dr. Stewart:

> 40. Employees of SUNY Downstate have continued to perpetuate the "old boys' network," resulting in unequal treatment of Dr. Blain. Specifically, for example, Defendant Stewart, the former dean of SUNY Downstate's School of Graduate Studies, consistently undermined Dr. Blain's authority and position as a mentor and supervisor to the graduate students that work in her laboratory, which he does not do to Dr. Blain's male colleagues. His conduct has harmed Dr. Blain's reputation among her peers and the student body. This has, in turn, impeded Dr. Blain's ability to attract the best and brightest students to work in her laboratory.

> 41. For example, Defendant Stewart has approved students' requests relating to their work in her laboratory and to their graduation trajectories without consulting Dr. Blain. Dr. Blain would not learn of those decisions, which often contradicted Dr. Blain's decisions, until after they were made.
>
> 42. In the rare instances that Defendant Stewart explained his decisions -- either directly to Dr. Blain or to the students involved -- he frequently stated that Dr. Blain was too tough of a "taskmaster" and had set too high of a standard for the graduate students who worked in her laboratory.
>
> 43. Defendant Stewart does not criticize Dr. Blain's male colleagues as being too "tough" and "taskmasters," nor does he engage in dismissive and marginalizing conduct towards them.
>
> 44. In one instance, Defendant Stewart independently approved requests for several months' long leaves of absence from Jane Doe 1, a graduate student working in Dr. Blain's laboratory. Defendant Stewart informed Dr. Blain of this only after he gave his approval of Jane Doe 1's requests. Moreover, he did not provide Dr. Blain with a clear indication of when Jane Doe 1 would return. This uncertainty became very disruptive to the work that Dr. Blain was doing in her laboratory and made it difficult for Jane Doe 1 to meet academic deadlines.
>
> 45. Defendant Stewart has also made determinations regarding whether certain students under Dr. Blain's supervision were ready to graduate without consulting Dr. Blain, who had more direct experience with the students and their work. Often, he would not discuss the bases for his decisions. These decisions denied Dr. Blain the ability to independently evaluate and work with the students under her supervision.

Am. Compl. at 12–13.

These direct allegations against Dr. Stewart are not discriminatory on their face and do not suggest that Dr. Stewart somehow "aided and abetted" Dr. Riley's alleged discrimination. *First*, Plaintiff's allegations are insufficient to give rise to even an inference that Dr. Stewart discriminated against her. Plaintiff does not allege Dr. Stewart made comments about her gender or took any action that was motivated by her gender. Instead, she tries to characterize her allegations against Dr. Stewart as discriminatory by simply asserting that Dr. Stewart did not treat male colleagues similarly. But that conclusory allegation—without anything more—is insufficient to state a claim. Were it otherwise, any employee could transform any minor grievance into a discrimination claim by attaching a conclusory assertion that others who

do not share the employee's protected characteristic do not have the same grievances. The allegations contain no other circumstantial evidence that would allow a factfinder to draw an inference that Dr. Stewart's alleged conduct was motivated by Dr. Blain's gender. "It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part because of her gender." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Allowing Dr. Blain's claim to go forward, when she simply has not met this standard, would open the courthouse doors to any petty grievance suffered in one's course of employment.

Moreover, this Court has already concluded—after listening to days of live testimony from witnesses—that Dr. Stewart's minimal involvement in the events that give rise to this case was not motivated by animus against Dr. Blain. The Court recognized that Dr. Stewart's 2016 investigation—on which Dr. Blain repeatedly relies in her Amended Complaint—was not motivated by animus because "Dr. Stewart considered it a 'student-to-student allegation of academic misconduct,'" rather than an allegation against Dr. Blain. ECF No. 73 at 21. The Court also correctly recognized that "Dr. Stewart did not have any supervisory authority over Dr. Blain." *Id.* at 21. Nothing in the Amended Complaint casts doubt on the Court's correct conclusions. All the Amended Complaint alleges is that she had certain disagreements with Dr. Stewart, a colleague, that Dr. Stewart did not have with his male colleagues. That cannot be sufficient to state a discrimination claim.[1]

***Second***, Plaintiff's allegations are woefully insufficient to state an "aiding and abetting" claim against Dr. Stewart. Plaintiff's only two claims against Dr. Stewart assert that Dr. Stewart "aided and abetted Defendant Riley's discrimination of Dr. Blain." Am. Compl. ¶¶ 255, 264. Dr. Blain alleges that Defendant Riley discriminated against her "on the basis of sex in compensation and/or in terms, conditions, or privileges of employment." *Id.*

None of the allegations against Dr. Stewart relate to Defendant Riley's alleged discrimination. Instead, they concern Plaintiff's supervision and management of her laboratory and the graduate students who worked there. Plaintiff does not allege that Defendant Riley had any role in the supervision of Dr. Blain's laboratory or the students who work there. The allegations against Defendant Riley focus on allegedly unequal pay and the 2019 research misconduct investigation on which Plaintiff's entire case is centered. Plaintiff does not allege Dr. Stewart was involved in the 2019 investigation, nor does Plaintiff allege that Dr. Stewart played any role in determining Dr. Blain's pay. And according to Plaintiff, Dr. Stewart's 2016 investigation into alleged research misconduct by one of Dr. Blain's students was not biased; she even points to Dr. Stewart's 2016 investigation as comparative proof that the 2019 investigation was biased because it failed to reach the same conclusion. *See* Am. Compl. ¶ 56.

---

[1] The Court also correctly held that the other workplace complaints Dr. Blain alleged—"underpayment compared to her male colleagues, delayed tenure eligibility, obstacles to her research, decreased opportunities for professional development, erosion of her reputation among her peers and students, and the creation of a generally hostile work environment"—were "even if true, [ ] too attenuated from the conduct of the [2019] Investigation Committee to support an inference that its report was based, even in part, on gender discrimination." ECF No. 73 at 22–23.

**Dr. Blain's Claims Against Dr. Stewart are Barred by the Statute of Limitations**

As previously set out in Dr. Stewart's request for a pre-motion conference, Plaintiff's claims against Dr. Stewart are also barred by the three-year statute of limitations of the NYCHRL and the NYSHRL. *See Palmer v. Cook*, 65 Misc.3d 374, 381 (N.Y. Sup. Ct., Queens Cty. 2019). The last graduate student who worked in Dr. Blain's lab graduated from SUNY Downstate in 2019. Thus, Dr. Stewart could not have undermined her "position as a mentor and supervisor to the graduate students that work in her laboratory" since 2019, at the latest. Am. Compl. ¶ 40. To mask the staleness of her claims, Plaintiff does not attach any dates to the allegations she levels against Dr. Stewart. *Id.* ¶¶ 40–45. The latest date Plaintiff mentions in connection with Dr. Stewart's actions is December 20, 2016. *See id.* ¶¶ 56, 70–71. Since 2019, Dr. Stewart has not had any overlapping supervisory authority with Dr. Blain and therefore cannot have possibly undermined her authority. The Amended Complaint was filed on April 26, 2023, more than three years after Dr. Stewart's alleged conduct.

Plaintiff's claims against Dr. Stewart are not rendered timely by allegations that other defendants discriminated against her within the statute of limitations period. Such a continuing violation theory would be viable only if Plaintiff alleged a connection between Dr. Stewart's purported conduct and the allegations against the other defendants. *See Mario v. New York State Div. of Hum. Rts.*, 200 A.D.3d 1591, 1592 (1st Dep't 2021) (for the continuing violation doctrine to apply, conduct must be "sufficiently similar to justify the conclusion that both were part of a single discriminatory practice" (cleaned up)). But Plaintiff does not (and cannot) do so, making her claims against Dr. Stewart untimely. *See Palmer*, 65 Misc. 3d at 384 (dismissing claims based on conduct that happened four years prior to the rest of the conduct at issue in the complaint); *see also Green v. Continuum Health Partners, Inc.*, 88 A.D.3d 487, 487 (1st Dep't 2011) (dismissing plaintiff's claims as untimely where there was a years-long gap in time between prior conduct and conduct falling within the statute of limitations).

\* \* \*

Dr. Stewart's motion should be granted because the allegations fall well short of stating a claim against him. Discovery is likely to be burdensome for Dr. Stewart. Dr. Blain has indicated she intends to seek discovery from Dr. Stewart beyond the emails or other documents that he has on his SUNY accounts and devices; in fact, she will be seeking discovery from Dr. Stewart's personal phone and messaging apps. Dr. Stewart will also need "to engage in [his] own document discovery of plaintiff[ ], with the attendant need to review that discovery and make appropriate applications to compel." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 75 (S.D.N.Y. 2013).

For all these reasons, Dr. Stewart respectfully requests that the Court dismiss the claims against him and return him back to the role he should properly occupy in this lawsuit—a document custodian for Defendant SUNY and a potential witness.

Respectfully submitted,

*/s/ Samuel Shapiro*
Samuel Shapiro
Sarah Mac Dougall

*Attorneys for Defendant Mark Stewart*

cc: All Counsel of Record via ECF